RECEIVED
SEP 2 7 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| EDDY GREIG, et al. | CIVIL ACTION NO. 03-0417 |
| VS. | JUDGE DOHERTY |
| PAMELA CHAMPAGNE THIBODEAUX, et al. | MAGISTRATE JUDGE METHVIN |

## MINUTES OF SHOW CAUSE HEARING AND REPORT RECOMMENDING SUSPENSION OF ATTORNEY JERMAINE WILLIAMS TO PRACTICE IN THIS DISTRICT

On September 21, 2006, the undersigned conducted a show cause hearing to address the professional conduct of attorney Jermaine Williams, former counsel for plaintiffs in the above-captioned matter. The specific purpose of the extant hearing was to address Mr. Williams's failure to pay a court-ordered award of attorney's fees in the amount of $974.50 to defendants the City of St. Martinville, Mayor Eric Martin, and Pamela Champagne Thibodeaux, represented by Jim Pate. The circumstances surrounding how and why those fees were assessed is set forth below. Also set forth below are additional cases in which Mr. Williams's conduct has been deemed to be unprofessional by the court.

1. **Greig, et al. v. Thibodeaux, et al., Civil Action No. 03-0417**

On August 25, 2005 and August 29, 2005, defendants The City of St. Martinville, Mayor Eric Martin, and Pamela Champagne Thibodeaux filed two motions to compel discovery responses against plaintiffs.[1] In their motion filed on August 25, 2005, defendants sought an order requiring full and complete responses to defendants' first set of interrogatories and requests for production of documents propounded on plaintiffs on May 6, 2005, while in their motion

---

[1] Rec. Docs. 63 and 65, respectively.

filed on August 29, 2005, defendants sought an order requiring initial responses to defendants' second set of interrogatories and requests for production of documents propounded on plaintiffs on June 16, 2005.[2] **Plaintiffs, represented by Mr. Williams, did not respond to either motion.** On September 19, 2005, finding that the motions sought relevant and discoverable information, the undersigned granted the motions, ordered that the requested discovery be produced within ten days, and awarded attorneys fees to defendants.[3] The fee award was assessed against plaintiffs, not Mr. Williams, and defense counsel were instructed to file an affidavit into the record so that court could assess the proper amount of fees to be awarded. **Mr. Williams did not file an objection to the sanctions on behalf of his clients.**

On March 2, 2006, Mr. Williams withdrew as counsel for plaintiffs in this matter.[4]

On November 2, 2005, defendants filed a motion to compel and motion to enforce the court's September 19, 2005 ruling.[5] In this motion, defendants argued that the discovery that had been ordered produced within ten days had never been produced. Several weeks later, believing that they were going to finally receive substantive responses to their discovery requests, the defendants withdrew their motion.[6]

---

[2] Although defendants state that their second set of discovery propounded on plaintiffs on June 16, 2005 contains both interrogatories and requests for production of documents, a copy of the disputed discovery requests contains only requests for production of documents.

[3] Rec. Doc. 72.

[4] Rec. Doc. 91.

[5] Rec. Doc. 80.

[6] Rec. Doc. 83.

On April 27, 2006, after efforts to obtain the discovery from plaintiffs failed, defendants filed a second motion to compel and motion to enforce the court's September 19, 2005 ruling.[7] In their motion, defendants contended that the discovery that was ordered produced on September 19, 2006 within ten days had never been produced, and that defendants were severely prejudiced by plaintiff's failure to cooperate in the discovery process. On June 21, 2006, the undersigned conducted a hearing on the motion.[8] Mr. Williams, who no longer represented the plaintiffs, was not present. During that hearing, the undersigned learned that Mr. Williams had never produced the discovery that his clients had been ordered to produce, and that the plaintiffs had failed to pay the $974.50 attorney's fees award that the court had awarded to defendants. Finding that the failure of plaintiffs to produce the court-ordered discovery was due in large measure to the inadequate representation of Mr. Williams, the court ordered that Mr. Williams personally pay the $974.50 sanction within thirty days. A copy of the court's June 21, 2006 Minutes was mailed to Mr. Williams by the Clerk of Court on June 28, 2006, along with a cover letter explaining that the sanctions had been awarded against him personally and providing instructions for payment of the sanction.[9] The Minutes themselves specifically cautioned Mr. Williams that failure to pay the sanctions within thirty days would result in the issuance of an order directing Mr. Williams to show cause why it should not be recommended to the district judges of this court that he be recommended for suspension from practice in this district. **Mr.**

---

[7] Rec. Doc. 93.

[8] See Minutes of Hearing, Rec. Doc. 115.

[9] Rec. Doc. 116.

4

**Williams did not respond to the Clerk of Court's letter and/or the minutes from the June 21, 2006 hearing.**

When Mr. Williams did not pay the $974.50 sanction within thirty days, on August 16, 2006, the undersigned issued an Order to Show Cause why Mr. Williams should not be recommended for dismissal from practice in this district.[10] The Order detailed the facts of this case, as well as the numerous instances of unprofessional conduct exhibits by Mr. Williams in other cases (detailed hereinbelow), and scheduled a show cause hearing on September 21, 2006. The record shows that Amy Benoit, an employee in Mr. Williams's office, received a copy of the court's show cause order on August 22, 2006.[11] **Mr. Williams did not respond to the show cause order.**

On September 21, 2006, the undersigned conducted a show cause hearing to determine whether a recommendation of suspension from practice in this district was warranted. At the hearing, Mr. Williams stated that he did not personally receive the Clerk of Court's June 21, 2006 letter attaching the copy of the court's minutes from the hearing, but he "assumes" that he must have gotten it. Mr. Williams did acknowledge receipt of the court's show cause order setting the show cause hearing on September 21, 2006 and admitted that he did not respond to it. Mr. Williams then argued that it was unfair for the court to award attorney's fees against him personally when he was not present at the court's June 21, 2006 hearing, contending that his due process rights had been violated by the court because he had not been afforded an opportunity to

---

[10] Rec. Doc. 125.

[11] Rec. Doc. 127.

object to the imposition of sanctions against him personally. Mr. Williams then began to argue the merits of the motions to compel that had been filed in August 2005, stating that, despite the ongoing discovery dispute documented in the record, he had, in fact, responded substantively to every discovery request that defendants propounded. He also offered into evidence several sets of supplemental discovery responses that he claimed satisfied defendants' discovery requests.[12]

The court declined to re-hash the substance of the motions to compel that had been filed more than one year earlier, noting that there is a procedure for contesting discovery matters in federal court and that, if the plaintiffs objected to any of the rulings that the court had issued ordering that more complete discovery responses be produced, they should have raised their objections within the parameters of that procedure. Furthermore, the court advised Mr. Williams that his due process rights had not been violated, inasmuch as he had been given numerous opportunities to contest the personal imposition of sanctions against him – both at the time he received the Clerk of Court's June 28, 2006 letter and a copy of the court's June 21, 2006 Minutes, and at the time he received the court's August 16, 2006 show cause order – and that he'd declined on both occasions to respond in any way.

At the conclusion of the hearing, the court asked Mr. Williams if it was his intention to pay the sanction that had been personally assessed against him in the amount of $974.50. **Mr. Williams replied that he would not pay the sanction.**

---

[12] A copy of Mr. Williams's submissions is attached hereto as Exhibit "A."

28 U.S.C. §1927 states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C.A. §1927. This statute allows district courts to "assess attorney's fees against litigants, counsel, and law firms who willfully abuse the judicial process by conduct tantamount to bad faith." Avirgan v. Hull, 932 F.2d 1572, 1582 (11th Cir.1991), cited in Dictiomatic, Inc. v. U.S. Fidelity & Guar. Co., 127 F.Supp.2d 1239, 1247 (S.D.Fla.1999); Roadway Express Inc. v. Piper, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (it is well established that a court, in its discretion, may assess attorney's fees against litigants, counsel and law firms who willfully abuse judicial process by conduct tantamount to bad faith). Noted the court in Reno v. International Harvester Co., 115 F.R.D. 6, *9-10 (S.D.Ohio,1986):

> The power of a court over members of its bar is at least as great as its authority over litigants. If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes. See Renfrew, Discovery Sanctions: A Judicial Perspective, 67 Calif.L.Rev. 264, 268 (1979). Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record. But in a *10 proper case, such sanctions are within a court's powers. Roadway Express, Inc., 447 U.S. at 766-67.

Here, the record is clear that, during the time period that Mr. Williams represented plaintiffs in this matter, he failed to cooperate in the discovery process generally and specifically failed to comply with the court's discovery orders. Moreover, Mr. Williams's unprofessional conduct as plaintiffs' counsel affected this case long after he withdrew as counsel in the case, considering that almost a year after the court ordered that defendants be provided with discovery,

they were still having to file motions to obtain that discovery. Although he has had numerous opportunities over the past year to argue his positions in court, Mr. Williams has simply chosen not to appear on any occasion other than the two show cause hearings this court has already conducted with him.

2.  **United States of America v. Bernd Johann Thomann, Criminal No. 06-60022**

On April 18, 2006, the court issued a Criminal Scheduling Order, which set the pre-trial conference in the Thomann case for June 8, 2006 at 10:00 a.m. by telephone.[13] The conference call was to be initiated by counsel for defendant, Mr. Williams. Mr. Williams did not appear for the conference. At 10:15 a.m., Mr. Williams' associate, Quincy Cawthorne, initiated the conference call. The delay was caused because Mr. Cawthorne was not aware that he was to include government counsel on a conference call.

During the conference, Mr. Cawthorne admitted that he is not enrolled in this case, nor is he admitted to practice in the Western District of Louisiana. Mr. Cawthorne advised that Mr. Williams was unable to participate in the conference because he was on his way to New York and he had asked Mr. Cawthorne to "sit in" on the conference for him. Although Mr. Cawthorne had Mr. Williams's cell phone number, he advised that Mr. Williams was unavailable. Following the conference, the undersigned issued an order requiring Mr. Williams to appear in open court and show cause why he should not be sanctioned for his failure to appear on his client's behalf at a criminal pre-trial conference.

---

[13] See United States of America v. Bernd Johann Thomann, Criminal No. 06-60022, Rec. Doc. 11.

At the show cause hearing, Mr. Williams was admonished for having a non-enrolled, non-member of this court's bar participate in the pre-trial conference for him. The court also addressed the other instances of Mr. Williams's unprofessional conduct, including his conduct in the aforementioned Greig case, stating that his actions indicate a reluctance to be present in federal court. With respect to Greig, the court noted:

> Mr. Williams's failure to respond to the propounded discovery is having continuing effects because on April 17, 2006, defendants filed a second motion to enforce the order granting the Motions to Compel, along with a Motion for Attorney's Fees.

At the conclusion of the hearing, Mr. Williams advised that he intends to continue to practice law in federal court in this district, and he assured the court that he would familiarize himself with all of the federal civil, criminal, and local rules. Based on these assurances, the undersigned took no action and did not recommend any further sanctions against Mr Williams. Mr. Williams was expressly warned, however, that any future problems involving him would result in a recommendation to the district judges that he be disciplined.

### Straightforward America, Inc. v. Gaspard, Civil Action No. 04-2549

On August 22, 2005, defendant filed a motion to compel against plaintiff, represented by Greg Williams and Jermaine Williams, both of the firm Williams & Doran.[14] Plaintiff failed to respond to the motion. On September 19, 2005, the undersigned granted the motion and awarded attorney's fees.[15] On October 4, 2005, defendant filed a motion for sanctions, stating that plaintiff

---

[14] See Straightforward America, Inc. v. Gaspard, Civil Action No. 04-2549, Rec. Doc. 13.

[15] Rec. Doc. 15.

did not provide the discovery within the deadline as ordered by the court.[16] On October 26, 2005, the undersigned ultimately conducted a hearing on both the motion for sanctions and the motion for attorney's fees. Only Greg Williams appeared at the hearing.[17] The undersigned concluded that the failure to provide discovery was due to the fault of defendant Gaspard himself, and not his counsel. Therefore, the court granted the motion for attorney's fees, awarding $333.50 to defendant, but denied the motion for sanctions. On November 29, 2005, defendant filed a second motion for sanctions and for attorney's fees, stating again that plaintiff did not provide the discovery within the deadline ordered by the court.[18] On February 13, 2006, the undersigned filed a report recommending a default judgment in favor of plaintiff and granting attorney's fees.[19] On March 7, 2006, the district Judge adopted the findings and recommendations and entered judgment in favor of plaintiff and against defendant Gaspard on all claims for his failure to obey the Court's Orders entered under Rule 37 and October 25, 2005.[20]

On March 9, 2006, defendant filed a motion for a hearing to determine damages,[21] which the undersigned set for hearing on May 2, 2006. On May 1, 2006, the undersigned's law clerk, Stacey Blanke, called the firm of Williams & Doran in order to obtain the phone number of Greg Williams, who by then had left the Williams & Doran law firm, to discuss the upcoming hearing.

---

[16] Rec. Doc. 18.

[17] Rec. Doc. 23.

[18] Rec. Doc. 32.

[19] Rec. Docs. 32 & 33.

[20] Rec. Doc. 23.

[21] Rec. Doc. 35.

The court did not have Greg Williams' phone number because Greg Williams had not effected a change of address with the Clerk of Court and his current number therefore did not appear on the docket sheet. Jermaine Williams' secretary answered the phone, but declined to give Ms. Blanke the phone number for Greg Williams. Ms. Blanke asked to speak to Jermaine Williams, whom she heard coaching the secretary in the background. Mr. Williams took the phone and told Ms. Blanke that he did not have Greg Williams's telephone number and had no way to get in touch with him. In a subsequent phone call with the undersigned, Mr. Williams again claimed not to have contact information for Greg Williams. The court informed Mr. Williams that the evidentiary hearing was to be held the next day, May 2nd, and that since he was still listed as co-counsel for defendant Gaspard, and we had no phone number for counsel Greg Williams, the court expected him – Jermaine Williams – to appear at the hearing or be held in contempt. Within minutes of this conversation, Greg Williams called chambers and spoke with Ms. Blanke. It appears that, contrary to his statement to me and my law clerk, Jermaine Williams did have a way to contact Greg Williams, and for whatever reason, had chosen not to provide the court with the information it was seeking.[22]

### *Conclusion*

Considering the foregoing instances of Mr. Williams's unprofessional conduct, and specifically considering his recent refusal to pay a court-ordered sanctions imposed against him personally for his wilful failure to cooperate in the discovery process, **IT IS RECOMMENDED that Mr. Williams be suspended from the practice of law in this district.**

---

[22] The motion to determine damages is presently unresolved, as the case has been stayed due to the pending bankruptcy of defendant Neil Gaspard. See Rec. Doc. 38.

cgg C:\WPDOCS\030417.Greig.OTSC.Williams.Minutes.wpd9/25/06

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana on September ___, 2006.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)